IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00575-PAB

JACQUELINE HAWK,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

This matter is before the Court on plaintiff Jacqueline Hawk's complaint [Docket No. 1], filed on March 6, 2012. Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On June 5, 2009, plaintiff applied for disability benefits under Title II and Title XVI of the Act. R. at 13. Plaintiff alleged that she had been disabled since January 7, 2005. *Id*. After an initial administrative denial of her claim, plaintiff received a hearing

___

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

before an Administrative Law Judge ("ALJ") on January 20, 2011. *Id*. On February 24, 2011, the ALJ issued a decision denying plaintiff's claim. *Id*. at 22.

The ALJ found that plaintiff had the following severe impairments: "lumbar degenerative joint disease, major depressive disorder, PTSD, migraine headaches, and alcohol abuse disorder in partial remission." R. at 15. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, R. at 17, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.927(b), that does not require more than occasional bending, stooping, or crouching, does not require working in groups of more than five, and does not require more than occasional interaction with the general public.

R. at 18. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff was not disabled as "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. at 21.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the

record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff argues that the ALJ erred in determining plaintiff's RFC by failing to consider certain aspects of opinions submitted by plaintiff's treating physician, Dr. Robert Magnuson, and one of plaintiff's consulting examiners, Dr. Louis Hoffman. Docket No. 16 at 4-6.

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id*. at 1010; *see also* SSR 96-8p, 1996 WL 374184, at *7,  (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *see also Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (holding that ALJ erred in accepting some of the limitations listed on a mental impairment RFC form by a nonexamining physician, while rejecting others without explanation).  The Court may not affirm an ALJ's decision based on a post-hoc rationale supplied in an appellate brief, since doing so would "usurp essential functions committed in the first instance to the administrative process."  *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004).  Although the Tenth

Circuit has applied the doctrine of harmless error in administrative appeals, it is only appropriate where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id*. at 1145.

### 1. Dr. Magnuson

Plaintiff argues that the ALJ erred in giving no weight to the opinions of Dr. Magnuson contained in two Med-9 forms and a Headaches Residual Functional Capacity Questionnaire (the "headache questionnaire"). Docket No. 16 at 4-5; *see* R. at 20. The ALJ understandably concluded that Dr. Magnuson's opinions were unsigned because the signature line contains only a checkmark. *See* R. at 230, 295, 301. However, Dr. Magnuson's subsequent letter, R. at 303, indicates that he did sign these forms and the signature on his letter also has the appearance of a checkmark. Thus, the ALJ's conclusion that the forms and headache questionnaire were unsigned was a mistake of fact.

If the medical opinion of a treating practitioner is well supported by medically acceptable evidence and is not inconsistent with the other substantial evidence in the record, an ALJ must give it controlling weight. 20 C.F.R. § 416.927(2)(c). In the event that the opinion of a treating physician does not merit controlling weight, the ALJ considers the following factors in determining how to evaluate the opinion: length of the treating relationship, frequency of examination, nature and extent of the treating relationship, evidentiary support, consistency with the record, medical specialization, and other relevant considerations. *Id.* An ALJ may dismiss or discount an opinion from a medical source only if her decision to do so is "based on an evaluation of all of the

factors set out in the cited regulations" and if she provides "specific, legitimate reasons" for her rejection. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). An ALJ's rejection of a medical opinion based on an incorrect reading of the record is grounds for remand. *See Mercer v. Colvin*, 2013 WL 785358, at *2 (N.D. Okla. Mar. 1, 2013).

### a. Headaches Residual Functional Capacity Questionnaire

Defendant argues that, even though the ALJ did not "affirmatively discuss" the headache questionnaire, "the ALJ's residual functional capacity determination is not entirely inconsistent with the limitations" found by Dr. Magnuson. Docket No. 17 at 14. Defendant further argues that, to the extent that the ALJ's RFC determination is inconsistent with Dr. Magnuson's opinion, the failure to explicitly discuss this discrepancy is harmless error because the ALJ relied on Dr. Magnuson's objective medical findings–specifically his findings that plaintiff has normal strength, muscle tone, gait, joints, and motor function–in rejecting the more restrictive limitations that Dr. Magnuson proposed. Docket No. 17 at 15-16 ("the ALJ's citation to the benign objective examination and radiological evidence were adequate to satisfy the ALJ's non-adoption of Dr. Magnuson's limitations that were more restrictive than the residual functional capacity").

Dr. Magnuson began serving as plaintiff's general practitioner on October 29, 2010 and plaintiff has visited his office a number of times since then. R. at 231-272. On the headache questionnaire, he answered "Yes" to the question of whether plaintiff would sometimes need to take unscheduled breaks during an eight-hour workday. R.

at 300.  He further stated that she would need to take such breaks twice per week for a period of two hours at a time.  *Id*.

At the hearing, the ALJ asked the VE which jobs were available to a hypothetical individual with claimant's physical limitations, i.e. someone restricted to light work that does not require more than occasional bending, stooping, or crouching.  R. at 42.  The VE identified several jobs.  *Id*.  The ALJ then asked whether the identified jobs could be performed by someone with plaintiff's nonexertional limitations, namely, that she cannot work in groups larger than five or interact with the public.  *Id*.  The VE stated that an individual with those limitations could work as a maid, a parts assembler, or a laundry worker.  R. at 43.  Finally, the ALJ asked which jobs would be available if she imposed "the additional limitation that the person would miss work two to three times per month on an unscheduled basis."  R. at 44.  In response to this third hypothetical, the VE stated that there would be no jobs available for such an individual.  *Id*.  The ALJ did not discuss this third hypothetical in her decision.  *See generally*, R. at 13-22.

Defendant does not cite, nor has the Court found, any evidence in the record contradicting Dr. Magnuson's opinion that plaintiff's migraines would require her to miss work two times per week for two hours at a time.  R. at 300.  On the contrary, on August 15, 2009, plaintiff told Dr. Borja that she experiences a migraine headache twice a week, lasting up to three hours.  R. at 214.  Nonetheless, the ALJ neither included this limitation in the RFC determination nor discussed her reason for discounting this aspect of Dr. Magnuson's opinion, except to state that she was disregarding the questionnaire in its entirety because she found that it was not signed.  R. at 20.  As stated above,

these forms were, in fact, signed by Dr. Magnuson. *See* R. at 303. Thus, the ALJ did not have a "specific, legitimate" reason for rejecting the questionnaire, *see Chapo*, 682 F.3d at 1291, and the ALJ's mistaken reading of the record is grounds for remand. *See Mercer*, 2013 WL 785358, at *2.

Moreover, Dr. Magnuson's opinion that plaintiff needs to miss work several times each week constitutes "uncontroverted evidence" that the ALJ chose not to rely on and was thus required to discuss. *See Clifton*, 79 F.3d at 1010. Given the VE's testimony that the need to miss work "two to three times per month on an unscheduled basis" would eliminate all available jobs, R. at 44, this opinion constitutes "significantly probative evidence" that was rejected by the ALJ. *See id*. Defendant's argument that the failure to discuss the questionnaire is harmless error is unavailing. The Court cannot "confidently say that no reasonable administrative factfinder . . . could have resolved the factual matter in any other way," and thus this argument invites only impermissible post-hoc rationalization. *See Allen*, 357 F.3d at 1145.

Since the ALJ's stated reason for rejecting the uncontroverted medical opinion of plaintiff's treating physician is invalid, and this evidence appears to be both uncontroverted and probative, this case must be remanded so that the ALJ can weigh the questionnaire in assessing plaintiff's RFC.

### b. Med-9 Forms

Plaintiff argues that the ALJ erred by failing to consider the two Med-9 forms submitted by Dr. Magnuson, both of which state that plaintiff has been or will be disabled and incapable of working for a period of six months. Docket No. 16 at 5. The

Commissioner argues that the ALJ could not give any weight to the Med-9 forms because they do not contain a medical opinion but instead state a conclusion on an issue reserved to the Commissioner. Docket No. 17 at 13.

An ultimate determination on the question of a claimant's disability is reserved to the Commissioner, 20 C.F.R. § 416.927(d), and thus, a treating physician's opinion that a claimant is disabled may not be given controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). Nonetheless, the Social Security rules "provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." *Id*. The Tenth Circuit has declined to impose a categorical rule that the opinion of a treating physician only constitutes substantial evidence when it includes examination findings or treatment notes. *Anderson v. Astrue*, 319 F. App'x 712, 723 (10th Cir. 2009); *see also Angster v. Astrue*, 703 F. Supp. 2d 1219, 1229 (D. Colo. 2010) (finding that an ALJ's decision to reject a mental impairment questionnaire because it did not include treatment notes was unfounded given that other evidence in the record supported facts of plaintiff's treatment history and was consistent with questionnaire). In addition, an ALJ may not infer that a treating physician's opinion is of "limited reliability" solely because it is expressed in a form that consists largely of check-boxes and does not ask for extensive rationales. *Anderson*, 319 F. App'x at 723-24.

On the two Med-9 forms that he submitted in this case, Dr. Magnuson checked the box next to the statement that: "I find this individual **has been or will be disabled for a period of 6 months** or longer to the extent they are unable to work at any job due

to a physical or mental impairment. Prognosis: Client is expected to be disabled for  6  months." R. at 230, 295 (emphasis in original). No other box is checked and no other information is provided by Dr. Magnuson.

The Med-9 forms completed by Dr. Magnuson contain an opinion from a medical source concerning an issue reserved to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. However, since the ALJ gave no weight to these forms because she mistakenly believed they were not signed, she did not "carefully consider" Dr. Magnuson's opinion as required by the Social Security Rules. *See* SSR 96-5p, 1996 WL 374183, at *2*. Although the ALJ may well have good reason to accord them no weight, *see Chapo*, 682 F.3d at 1289 ("The ALJ properly gave no weight to this conclusory [Med-9] form, which lacked any functional findings."), on remand the ALJ must consider these forms and apply the factors in 20 C.F.R. § 416.927(c)(2) to determine how much weight, if any, to give them. *See* SSR 96-5p, 1996 WL 374183, at *3 ("it would be appropriate to consider the supportability of the opinion and its consistency with the record as a whole . . . in evaluating an opinion about the claimant's ability to function which is from a State agency medical or psychological consultant who has based the opinion on the entire record").

### 2. Dr. Hoffman

Plaintiff argues that the ALJ erred in failing to consider Dr. Hoffman's findings that plaintiff has a Global Assessment of Functioning ("GAF") score of 48 and that plaintiff would likely find it very difficult to engage in appropriate interactions with other people in the workplace. Docket No. 16 at 6.

Defendant argues that the ALJ's failure to explicitly address these aspects of Dr. Hoffman's opinion is harmless error because the ALJ adopted Dr. Hoffman's diagnosis of PTSD and major depression and because the RFC is consistent with the functional limitations that Dr. Hoffman identified, including the restriction on interpersonal interaction. Docket No. 17 at 17; *see* R. at 18 ("claimant has the residual functional capacity to perform light work . . . that does not require . . . working in groups of more than five, and does not require more than occasional interaction with the general public."). Defendant also argues that the ALJ did not need to discuss plaintiff's GAF score because that number is only an index of the severity of plaintiff's symptoms and is not probative of specific functional limitations. Docket No. 17 at 17.

In a section of his report entitled "Diagnostic Impressions," Dr. Hoffmann states that plaintiff's current GAF is 48.[2] R. at 210. While the report does not analyze or interpret this score, it does analyze plaintiff's mental condition in detail, placing the number 48 within the context of plaintiff's specific difficulties. In the report's conclusion, Dr. Hoffman states that "[t]he combination of the PTSD with depression is severe enough that they would likely make it very difficult for Ms. Hawk to perform many job tasks, including appropriate interactions with other people." R. at 211.

---

[2] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (internal citations omitted). The Diagnostic and Statistical Manual of Mental Disorders explains that a GAF score between 41 and 50 indicates "'[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job).' Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)." *Id.*

In her decision, the ALJ discussed many of Dr. Hoffman's findings, including those related to plaintiff's demeanor, appearance, medical history, substance abuse, activities of daily living, psychiatric diagnosis, and prognosis. R. at 15-16. She did not discuss Dr. Hoffman's finding regarding plaintiff's GAF score or his statement that plaintiff would have considerable difficulty with all interpersonal interactions.

### a. GAF Score

"'While a GAF score may be of considerable help to the ALJ in formulating the RFC . . ., it is not essential to the RFC's accuracy' and taken alone does not establish an impairment serious enough to preclude an ability to work." *Holcomb v. Astrue*, 389 F. App'x 757, 759 (10th Cir. 2010) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). In *Drummond v. Astrue*, --- F. Supp. 2d ----, No. 11-cv-1286, 2012 WL 3962682, at *9-11 (D. Kan. Sept. 10, 2012), the court reviewed a number of recent cases from this circuit concerning the extent to which an ALJ must consider or discuss a claimant's GAF score. From this survey, the court distilled the principle that "GAF scores do not directly correlate to the severity criteria used by the Social Security Administration" and thus "a GAF score without a narrative explanation from the source of the score is of little value in determining the severity of the claimant's impairments or the limitations resulting from [her] impairments." *Id*. at *11. The court further explained that "the better and more thorough the narrative explanation given for the GAF score, the greater the consideration it must be given, and the greater the need for discussion in the decision." *Id*. Moreover, where a GAF score is inconsistent with the ALJ's findings, "that inconsistency must be resolved." *Id*.

The cases that defendant cites identify an additional relevant factor: the source of the score. Accordingly, courts have held that it is not error for an ALJ to omit discussion of an unexplained GAF score from a non-medical source, such as a licensed counselor, that is contradicted by other evidence in the record. *See Luttrell v. Astrue*, 453 F. App'x 786, 792 (10th Cir. 2011) ("Here, the GAF scores [assessed by a counselor] were neither uncontroverted nor significantly probative, particularly given their remote timing and conflict with the [consultative examiner's] detailed medical findings . . . . While it may have been preferable for the ALJ to have specifically recited why he chose to disregard the GAF scores, it is enough that" the ALJ's decision permits a reviewer to follow his reasoning); *Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011) (holding that it was not error for an ALJ to omit discussion of GAF scores that were assessed by counselors where those scores were controverted by a higher score submitted by a physician and were not linked to specific functional limitations); *Holcomb*, 389 F. App'x at 760 ("the lower GAF scores from other [non-medical] sources were not 'uncontroverted evidence [the ALJ] chose not to rely on,' *see Clifton*, 79 F.3d at 1010, but were, rather, bits of information not essential to [claimant's] RFC determination, inadequate to establish disability, and contradicted by an opinion from an acceptable medical source.").

In contrast, the court in *Hacker v. Astrue*, 2008 WL 4224952, *4-5 (W.D. Okla. Sept. 10, 2008), found that an ALJ erred by failing to discuss several aspects of an opinion submitted by a consultative examining psychiatrist, including his opinion that plaintiff had a GAF score of 40. When asked at the hearing about the impact of a GAF score between 40 and 50, the VE stated that a person with a score in that range might

be able to find a job but would be unable to keep it. *Id*. at *5. Based on this testimony, the court declined to find that the ALJ's error in accepting certain aspects of the psychiatrist's report while rejecting other aspects of it was harmless. *Id*.

In this case, plaintiff's GAF score was assessed in a consultative examination by an acceptable medical source. R. at 15; *see* 20 C.F.R. § 416.927(a)(2). It was submitted to the ALJ in the context of a seven-page report containing a thorough narrative explanation of plaintiff's medical history, diagnosis, and prognosis, which identified plaintiff's functional limitations. *See* R. at 205-11; *Drummond*, 2012 WL 3962682, at *11. The ALJ did not cite to evidence in the record that contradicts Dr. Hoffman's opinion that plaintiff has a GAF of 48. *See* R. at 20. Given that a GAF score of 48 signifies "serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)," the Court cannot conclude that the failure to address this aspect of Dr. Hoffman's opinion was harmless error. *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000); *Allen*, 357 F.3d at 1142. Furthermore, to the extent that the score is inconsistent with the ALJ's findings, that inconsistency must be resolved. *See Drummond*, 2012 WL 3962682 at *11.

### b. Personal Interaction

Plaintiff argues that the ALJ erred by failing to consider Dr. Hoffman's opinion that plaintiff would have difficulty dealing with all people, including co-workers and supervisors, as opposed to just the public. Docket No. 18 at 3-4. Defendant counters that the ALJ's RFC determination is consistent with the limitations that Dr. Hoffman found. Docket No. 17 at 17-18.

Although the ALJ did not explicitly address Dr. Hoffman's opinion that plaintiff would have difficulty in dealing with people, the decision demonstrates that she considered it, since she adopted a limitation relating to personal interaction. *See* R. at 18; *Clifton*, 79 F.3d at 1009-10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Dr. Hoffman did not say that plaintiff was entirely incapable of interacting with all people, only that interaction would be difficult for her. R. at 211. Moreover, plaintiff testified at the hearing that she can be around "[f]ive people, if I know them," but not more than that. R. at 37.

The record indicates that the ALJ considered Dr. Hoffman's opinion regarding plaintiff's difficulty interacting with other people and thus the ALJ did not err in failing to discuss it explicitly.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED March 29, 2013.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge